

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MICHAEL P. MC GRATH, JR. and )
MELISSA GALE, )
                                 )
         Plaintiffs, )
                                 )
     vs. )   No. 07 C 1519
                                 )
AMERICAN FAMILY MUTUAL )
INSURANCE CO., )
                                 )
         Defendant. )

## MEMORANDUM OPINION AND ORDER

This case is a relatively straightforward homeowners' insurance dispute. Plaintiffs Michael P. McGrath, Jr. and Melissa Gale suffered water damage inside their home. They filed a claim with their insurance company, defendant American Family Mutual Insurance Co., but the claim was denied. When American Family would not reconsider, the McGrath's filed this lawsuit for breach of insurance contract. American Family moved for summary judgment, which set off a flurry of filings by both parties. There currently are five motions before us: defendant's motion for summary judgment (dkt. 72), plaintiffs' motion to bar certain testimony of defendant's expert William Mazur (dkt. 82), defendant's motion to strike plaintiffs' motion to bar (dkt. 87), defendant's motion to strike portions of the affidavit of Michael McGrath (dkt. 93), and plaintiffs' motion to deem certain facts in the their Rule 56.1 Statement of Facts admitted (dkt. 96). Before we determine if summary judgment is appropriate, we address the parties' evidentiary motions.

## Evidentiary Motions

We begin with plaintiffs' motion to bar certain testimony of defendant's expert William

Mazur (dkt. 82), and defendant's related motion to strike plaintiffs' motion as untimely and improper (dkt. 87). Defendant argues that the court implicitly approved all of Mazur's testimony when it denied plaintiffs' earlier motion *in limine* (*see* tr. pretrial conf., 2/6/08, p.3), and that the court instructed the parties that no rulings from the pretrial conference would be re-opened or revisited (*see* min. order, 2/13/08). Plaintiffs contend that the earlier motion *in limine* challenged the testimony because it was not disclosed, as required under Federal Rule of Civil Procedure 26(a)(2), and that the current challenge is a separate challenge to the admissibility of the expert testimony under Rule 702 and <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993).

We agree with plaintiffs. At his deposition, Mazur, for the first time, testified that the primary source of water or moisture damage in the residence was due to a design defect that allowed normal moisture to "migrate[] into the unvented attic through interstitial ceiling spaces and condense[] on the colder exterior masonry units during cold weather conditions" (hereinafter "moisture source #3"). The expert report defendant previously supplied to plaintiff under Rule 26(a) identified six sources for the water or moisture damage, but did not identify a primary or predominate source. We denied the earlier motion only under Rule 26, and therefore this motion is a new challenge under Rule 702 and <u>Daubert</u>, and not an attempt to re-open a ruling from the pretrial conference. We deny defendant's motion to strike plaintiff's motion to bar portions of Mazur's testimony.

We now turn to the merits of the motion to bar.[1] Plaintiffs argue that Mazur's opinions regarding moisture source #3 are unreliable. In <u>Daubert</u>, the Supreme Court instructed that

---

[1] We acknowledge that this motion is not fully briefed and that defendant has not had an opportunity to file a brief on this matter. But in light of our disposition of the motion, we proceed nonetheless.

a federal trial judge has a special obligation to act as a gatekeeper to screen out purported scientific expert testimony that is not both relevant and reliable. Daubert, 509 U.S. at 589. The Court later extended that standard to all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). When we examine the reliability of expert testimony we consider "whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable." Zelinski v. Columbia 300, Inc., 335 F.3d 633, 640 (7th Cir. 2003).

Plaintiffs do not argue that Mazur is unqualified to render his opinion.[2] Instead, they assert that the methodology underlying Mazur's opinion is unreliable. Their three general arguments are (1) that the opinions are not based on reliable data; (2) that the opinion conflicts with plaintiffs' affidavits; and (3) that the opinion is contrary to other physical evidence. The latter two arguments are not proper challenges under Daubert. They address the persuasiveness of Mazur's opinion. See Daubert, 509 U.S. at 594-95 (holding that the focus of the analysis "must be solely on principles and methodology, not on the conclusions that they generate"); Smith v. Ford Motor Co., 215 F.3d 713, 719 (7th Cir. 2000) ("It is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound."). But the remaining argument is the crux of any Daubert analysis.

Plaintiffs argue that Mazur did not perform any calculations of relative humidity or dew point temperature to confirm his opinion, and that he speculated as to the humidity levels

---

[2] Mazur is a licensed professional engineer who has been involved with over 200 construction defect/forensic engineering projects that involved moisture intrusion since starting his employment with Rimkus in 1995 (Mazur dep., pp. 20-22.)

inside the residence during cold weather. While this may be true, we nonetheless find that the Rimkus Group's inspection of the premises was sufficient to provide the basis of an opinion for a professional engineer with the type of qualifications and experience of Mazur. *See* Kumho, 526 U.S. at 150 (holding that the Daubert inquiry is flexible and "depends upon the particular circumstances of the particular case at issue"); Fed. R. Evid. 702 advisory committee's note (explaining that one relevant factor to consider is "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give"). To arrive at his opinion, Mazur relied on detailed photographs from the inspection that show the interior of the dwelling, the exterior of the dwelling, the moisture damage, and the dwelling's two HVAC systems, which included humidifiers. We find that these photos provide a sufficient basis for an engineer of Mazur's experience to opine as to the various sources of the moisture intrusion. Although the specific calculations identified by plaintiffs may bolster the credibility of Mazur's opinion, his failure to perform them does not render the opinions unreliable. Further, although the photographs were taken during the summer, Mazur did not make any unreasonable assumptions when extrapolating winter weather conditions. Accordingly, we deny plaintiffs' motion to bar the testimony of Mazur regarding moisture source #3.

We turn next to defendant's motion to strike portions of the affidavit of plaintiff Michael McGrath (dkt. 93). Defendant asks the court to strike seven paragraphs from McGrath's affidavit supporting plaintiffs' response to summary judgment. Instead of examining each paragraph individually, we instead note that we have not relied on any of the challenged statements in reaching our decision on summary judgment and therefore deny defendant's motion to strike as moot.

We turn now to plaintiffs' motion to deem certain facts in the their Rule 56.1 Statement of Facts admitted (dkt. 96). When plaintiffs filed their response to the summary judgment motion, they included with it not only a response to defendant's Rule 56.1 Statement of Facts, but their own Rule 56.1 Statement of Facts as well. Defendant then filed a response to plaintiffs' Rule 56.1 statement. In that response, defendant takes issue with plaintiffs' statement, generally, by arguing that it is not concise and attempts to circumvent the local rule's maximum of 40 statements, by including multiple fact statements within one paragraph. Defendant then proceeds to challenge 24 statements individually. In response, plaintiffs filed this motion and argue that defendant's objections are improper. They ask the court to strike defendant's responses and to deem all of the relevant paragraphs admitted.

With regard to the general objections, we cannot agree with defendant. Although some of plaintiffs' numbered facts push the limit of Rule 56.1(b)(3)(C) and its requirement that only one fact appear in each statement, the majority are concise and comfortably fall within the rule. The facts are grouped together logically, and the entire statement of facts is less than 10 pages in length. Further, defendant was able to reply to the statement. Indeed, defendant fully agrees with 16 of the 40 numbered statements. We turn next to the specific objections and note that not all – indeed not much – of the information in plaintiffs' Rule 56.1 Statement of Fact is relevant to our decision on summary judgment. Therefore it makes little sense to address each paragraph individually. The more efficient course is to attempt to determine the relevant material facts for summary judgment from the agreed statements and resolve any factual disputes according to the appropriate summary judgment standard. We do so below. Accordingly, plaintiffs' motion to deem certain Rule 56.1 facts as admitted is denied.

## BACKGROUND[3]

In 2005, defendant issued a policy of homeowners' insurance to plaintiffs (ans. to 1st am cplt, ¶2). The policy insured plaintiffs' recently constructed home in Chicago (*id.*) The initial term of the policy was for the period of August 22, 2005, to August 22, 2006, and it was renewed for the period of August 22, 2006, to August 22, 2007 (*id.*, ¶2-3). Shortly after the policy was renewed, plaintiffs notified defendant of a possible loss resulting from water damage discovered in the interior of the dwelling (*id.*, ¶6; Gale dep., pp. 64, 71, 109-110).[4]

Defendant assigned the claim to a claim examiner (Aguinaga dep., pp. 64-65, 70-71). The examiner inspected the property and determined that the loss resulted from water damage from the parapet walls, built from cinder blocks, that allowed water to infiltrate into the dwelling (Aguinaga dep., p. 82, and exh. N). Defendant denied the claim based on the policy's exclusion for construction or design defect and a separate exclusion for fungi, wet or dry rot, or bacteria (Aguinaga dep., exh. N). Plaintiffs filed suit to recover.

In response to this litigation defendant hired Rimkus Consulting Group, Inc., to perform a water intrusion analysis and sampling for mold at plaintiffs' home. William Mazur, a professional engineer from the Rimkus Group, examined the dwelling and identified six sources of moisture intrusion (Rimkus Report, p. 2-3.) He attributed five of those sources to external water or moisture, in the form of rain, melting ice or snow, or ambient humidity that had penetrated the exterior brick walls due to either construction or design defects. (Mazur

---

[3] We take the following facts from the parties Rule 56.1 statements. The parties agree to the facts we recite, unless we have noted otherwise.

[4] Defendant denies this fact in its response to plaintiffs' Rule 56.1 statement. We find this denial inexplicable when we consider that in its answer to the first amended complaint defendant admitted that plaintiffs notified it of a claim and defendant admitted that it denied that claim on October 2, 2006. *See* Answer to First Amended Compl. at ¶6-7.

dep., pp. 49-53.) He determined that the remaining source of moisture resulted from normal relative humidity levels inside the dwelling that, due to a design defect, migrated into the unvented attic and condensed on the cooler exterior masonry units during cold weather conditions (Mazur dep., p. 58).[5]

## DISCUSSION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of the State of Illinois and defendant is a citizen of the State of Wisconsin. The amount in controversy exceeds $75,000. The parties agree that Illinois law applies.

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The standard for summary judgment is no different in insurance cases. Insurance policies are contracts, and the general rules of contract interpretation apply to the interpretation of insurance policies. Hobbs v. Hartford Ins. Co. of the Midwest, 214 Ill.2d 11 (2005). Summary judgment is appropriately utilized when an insurer's liability under an insurance policy turns on the construction of the policy's terms. See Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1342 (7th Cir. 1995) (quoting Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384 (1993)).

We begin our analysis by noting that defendant faces a difficult burden. Plaintiffs purchased an all-risk insurance policy. Individuals purchase such broad insurance for protection against just the sorts of unanticipated losses that plaintiffs suffered, and Illinois law

---

[5] The parties have not agreed to this fact in their respective Rule 56.1 statements, but in light of our disposition of plaintiffs' motion to bar this testimony, we include it here.

reflects that reality. Under Illinois law, in order to withstand summary judgment plaintiffs must first establish a prima facie case by "showing (1) that a loss occurred, (2) that the loss resulted from a fortuitous event, and (3) that an all-risk policy covering the property was in effect at the time of the loss." Wallis v. Country Mutual Ins. Co., 309 Ill. App. 3d 566, 570 (2000); *see also* Johnson Press of America, Inc. v. N. Ins. Co. of New York, 339 Ill. App. 3d 864, 871 (2003).[6] The Illinois courts have specifically rejected the contention that in order for plaintiffs to establish a prima facie case, they must prove the exact cause of the loss. Wallis, 309 Ill. App. 3d at 570 (citing Rutgens Distrib., Inc. v. United States Fidelity and Guar. Co., 94 Ill. App. 3d 753, 757 (1981)).

In this case there is no dispute that the interior of plaintiffs' home was damaged and that they suffered a loss. There is also no dispute that the policy was in effect at the time the damage occurred. Therefore, in order to succeed plaintiffs must demonstrate that their loss resulted from a fortuitous event.

The determination of whether a loss is fortuitous is a legal question for the court to undertake. Johnson Press, 339 Ill. App. 3d at 872; Mattis v. State Farm Fire & Cas. Co., 118 Ill. App. 3d 612, 621 (1983). "'Fortuitous' means happening by chance or accident, or occurring unexpectedly or without known cause." Johnson Press, 339 Ill. App. 3d at 872 (citing Black's Law Dictionary 664 (7th ed. 1999)). That the loss was caused by a pre-existing defect does not necessarily mean that the loss was not fortuitous – provided that the parties did not know of the defect or expect the loss at the time the contract was entered into. *See* Mattis,

---

[6] Defendant urges us to apply the six-part test found in Patrick Schaumburg Automobiles, Inc. v. Hanover Insurance Co., 452 F. Supp. 2d 857 (N.D. Ill. 2006), because that test includes a causation requirement and the plaintiffs in this case have offered no evidence about the actual cause of their loss. But Patrick dealt with fidelity insurance, and the policy at issue in this case is an all-risk homeowners' policy. For such a policy, the Illinois courts have adopted the three-part test we describe above.

118 Ill. App. 3d at 622-23; *see also* Sentinel Mgmt. Co. v. New Hampshire Ins. Co., 563 N.W.2d 296, 299 (Minn. Ct. App. 1997) (quoting Adams-Arapahoe Joint School Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 775 (10th Cir. 1989) (A "loss caused by pre-existing defect is fortuitous as long as neither party knew of the defect or expected the loss.")).

Here, plaintiffs' loss occurred because of moisture intrusion into the interior of the home. Upon examination of the dwelling, defendant's adjustor determined that the damage was caused by construction or design defects that allowed moisture to intrude into the home through the cinder block parapets. Similarly, defendant's expert attributed the damage to construction or design defects that allowed either external moisture into the dwelling or normal relative humidity levels inside the dwelling to migrate into the unvented attic and condense. No evidence has been presented that either party knew of these defects or expected the resulting loss. Therefore, the loss to the interior of the unit due to the moisture was a fortuitous event and the plaintiffs have established a prima facie case.

The burden next shifts to the defendant to show that the loss resulted from a peril specifically excluded from coverage. Wallis, 309 Ill. App. 3d at 570. Defendant attempts to exclude coverage under two provisions, one for construction or design defects and the other for latent or inherent defects. We examine each in turn.

The construction or design defect exclusion provides that the defendant does "not insure for loss caused by . . . faulty, inadequate or defective construction . . . [or] design." Defendant asserts that this provision excludes any loss connected to or caused by a construction defect. Plaintiffs argue that the provision excludes only losses directly related to the construction defect, such as the cost to correct the faulty parapets, and therefore is not applicable in this case because they seek only reimbursement for the loss resulting from the

interior water damage, such as damaged dry wall, interior insulation, and the like.

Generally, the terms of an insurance policy are to be accorded their plain and ordinary meaning. But where provisions are susceptible to more than one reasonable meaning, they are considered ambiguous and will be construed strictly against the insurer and liberally in favor of the insured. Rich v. Principal Life Ins. Co., 226 Ill. 2d 359, 371 (2007). This is especially true for provisions that limit or exclude coverage. *Id.*

While the plain language of the construction or design defect exclusion expressly excludes the cost to correct the construction defect, we find that the extent of the exclusion to ancillary damage is ambiguous. The provision includes no language that indicates that the exclusion extends to any loss resulting, however remotely, from construction or design defects, and other exclusions found in the policy do include such language. *See* Buscher v. Economy Premier Assurance Co., 2006 WL 268781 at *4-5 (D. Minn. Feb. 1, 2006) (determining that construction defect exclusions did not exclude water damage where exclusion was limited to "loss to property . . . caused by" construction defects, in contrast to other exclusions in the policy that exclude "loss caused directly or indirectly by . . . ."). For example, the latent or inherent defect exclusion in plaintiffs' policy includes specific language that excludes "loss caused directly or indirectly" by defects. Such language is notably absent in the construction or design defect exclusion. Thus, we read the exclusion narrowly against defendant and find that the construction and design defects exclusion does not apply to plaintiffs' loss from moisture intrusion that occurred as a result of construction or design defects.

We turn now to the latent or inherent defect exclusion. As we previously mentioned, the exclusion provides that defendant does "not cover loss to the property . . . resulting directly or indirectly from or caused by one or more of the following: . . . latent or inherent defect."

This provision, unlike the construction or design defect exclusion excludes indirect damage from defects. If it applies in this case, plaintiffs' losses will be excluded. But plaintiffs contend, albeit in a footnote, that the latent or inherent defect exclusion does not apply to their losses because that provision's purpose is to exclude a separate and distinct peril from the peril of defective design or construction. They argue that to read the provision otherwise renders it unnecessary because the construction and design defect exclusion stands alone to exclude coverage. We agree.

When interpreting contract language, "the court must assume that every provision was intended to serve a purpose, [therefore] an insurance policy is to be construed as a whole, giving effect to every provision, and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." Rich, 226 Ill. 2d at 371. The construction and design defect exclusion in plaintiffs' policy specifically excludes defective construction and design from coverage. Thus it is reasonable to conclude that the latent or inherent defect exclusion does not re-address defective construction or design as a latent defect. *See* Graf v. Allstate Ins. Co., 2007 WL 221244 at *2-4 (D.S.C. Jan. 25, 2007) (holding that because one exclusion specifically addressed negligent construction it was reasonable to conclude that a separate exclusion did not re-address negligent construction as a latent defect). We construe the exclusion narrowly against defendant and find that another reasonable interpretation of a latent defect is a hidden defect other than a construction or design defect. For example, in older structures the passage of time provides the opportunity for more defects to arise. Lead paint may be applied to walls, and then covered by wallpaper. Asbestos insulation may be installed behind walls. Such defects could occur well after construction, but would be undetected at the time the insurance policy is issued. These defects, hidden yet

unrelated to construction or design, would fall under our definition of a latent defect. Defendant has not carried its burden of establishing the applicability of either of the exclusions. Because there is no genuine issue of material fact as to whether plaintiffs' loss is excluded from coverage, we need not address the parties' arguments regarding the resulting loss exception from exclusion.

Plaintiffs ask the court for an order under Rule 56(d), limiting the legal issue of liability. The rule permits the court to enter an order where there are no material disputed facts concerning the resolution of an issue or issues. *See* Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2003). "The purpose of [the rule] is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." Republic Tobacco, L.P. v. N. Atlantic Trading Co., 254 F. Supp. 2d 985, 997 n.13 (N.D. Ill. 2002). The rule was recently revised to clarify its applicability in just this situation. (*See* Rule 56(d)(2)). ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.") Accordingly, because plaintiffs have successfully presented a prima facie case, and defendant has failed to show the applicability of any exclusion from coverage, we deem it established that defendant is liable to plaintiffs for breach of the insurance contract. The only issue remaining for trial is the amount of damages.

## CONCLUSION

For the reasons stated above, we deny defendant's motion for summary judgment. Further, we enter an order under Rule 56(d) that deems established defendant's liability to plaintiffs for breach of the insurance contract. We deny plaintiffs' motion to bar the testimony of William Mazur, and deny defendant's motion to strike plaintiffs' motion. Finally, we deny

as moot defendant's motion to strike portions of the affidavit of plaintiff Michael McGrath and plaintiffs' motion to deem their Rule 56.1 Statements of Fact admitted. These proceedings will continue to trial on the amount of damages.

                                                            _____
                                                                      JAMES B. MORAN
                                                             Senior Judge, U. S. District Court

_April 29_, 2008.